Fowler v. Hall.

---

## CHARLES FOWLER

### v.

## ROBERT HALL.

1. ACTION FOR MONEY PAID.—The general rule is that to sustain the count for money paid, the plaintiff must prove the actual payment and the defendant's prior request so to do, or his subsequent assent and approval of the act.

2. VOLUNTARY PAYMENT.—Where the plaintiff voluntarily pays money that the defendant was legally bound to pay, and the defendant afterwards promises to repay the plaintiff, the law will imply a request, the express promise being proved; but in the absence of an express promise or acts amounting to a ratification of the payment, no recovery can be had by the plaintiff.

3. STATEMENT.—Land had been levied upon and sold in satisfaction of a

Fowler v. Hall.

judgment against the debtor; and another judgment creditor of the debtor redeemed from such sale, and levied upon the same land, and before a sale under the last it was ascertained that the judgment debtor had no interest in the land. The judgment debtor had no knowledge of the sale or redemption by his creditor until long after the transaction. *Held*, that he was not liable to the last judgment creditor for the amount paid out by him to redeem from the first sale.

Appeal from the Circuit Court of Iroquois county; the Hon. Franklin Blades, Judge, presiding. Opinion filed December 4, 1880.

This action was instituted by the appellee against the appellant before a justice of the peace, and taken by appeal to the Circuit Court of Iroquois county, where a jury being waived, the cause was submitted to the court upon the following agreed state of facts:

"That William M. Coney caused a valid execution to be issued from the circuit court of said county in his favor, against Fowler, and caused the same to be regularly levied upon the N. W. ¼ of the S. E. ¼ of Sec. 30, town 26, north range 12 west, in said county, as the property of said Fowler; that the same was duly advertised and sold, and that Coney became the purchaser at the sale in satisfaction of his judgment against Fowler. That after the expiration of twelve and within fifteen months from the date of said sale, said plaintiff, Hall, also caused a valid execution to issue out of said court upon a judgment against said Fowler, and in favor of said Hall; that Hall paid to the sheriff the sum of $53.24, the amount necessary to redeem from the sale by Coney; which sum included the costs of said sale, and received a certificate of redemption as judgment creditor of Fowler; that he caused a levy to be made upon the same tract of land, for the purpose of having it sold as a judgment creditor to satisfy his judgment and execution.

"That after the redemption money had been paid by Hall and received by Coney, and before Hall had caused the premises to be re-sold, Hall ascertained the fact that Fowler had never had any interest or title whatever in the said land sold and redeemed as aforesaid. Fowler was in no way or manner instrumental in causing the levy and sale by Coney, nor in causing

Hall to make the redemption aforesaid; that he was ignorant of both transactions until after they had transpired. Thereupon Hall demanded of Fowler that he pay him the amount of his judgment against Fowler, and also the amount of the money paid out by said Hall to redeem from the judgment and sale made by Coney, with legal interest upon the same from the time he had so paid it. Fowler paid the judgment in favor of Hall against him, with the costs, but refused to pay Hall any money paid out by him in redeeming from the sale so made by Coney. That the amount paid by Hall to redeem from Coney, with interest, amounts to forty-five dollars and eighty-three cents, not including the costs of sale."

The court rendered judgment for the plaintiff, and the defendant brings the case here by appeal.

Messrs. KAY & EUANS, for appellant; that the levy and satisfaction under the first sale could have been set aside on learning that the debtor had no title to the land, cited Watson v. Reissig, 24 Ill. 281; Mason v. Thomas, 24 Ill. 285; Hughes v. Streeter, 24 Ill. 647.

The levy of execution upon sufficient property to satisfy an execution operates as a satisfaction: Montgomery v. Wayne, 14 Ill. 373.

Appellee did not let the land go to a second sale, and does not stand in the position of a bidder for the amount paid to redeem: Hitchcock v. Roney, 17 Ill. 231; Phillips v. Coffee, 17 Ill. 154.

Against appellee's right to recover: Jones v. Wilson, 3 Johns. 434.

Upon the question whether there is a remedy when the title of property purchased by the plaintiff under execution fails, and the property is recovered back from the creditor: Freeman on Executions, § 54; Freeman on Judgments, § 478; Warner v. Helm, 1 Gilm. 220; Price v. Boyd, 1 Dana, 436; Jones v. Henry, 3 Littell, 427; Muir v. Craig, 3 Blackf. 293.

The plaintiff may have the levy and sale set aside on motion, and proceed upon his judgment at law: Adams v. Smith, 5 Cow. 280; Ontario Bank v. Lansing, 2 Wend. 260.

Mr. STEPHEN G. BOVIE, for appellee; cited Bailey v. Buss-

Fowler v. Hall.

ing, 28 Conn. 455; Glean v. Dyke, 22 Peck, 390; Hunt v. Amidon, 4 Hill, 245; Stone v. Darnell, 25 Tex. 430.

Pillsbury, J.   This action is brought by Hall, to recover money alleged to have been paid by him for the use of Fowler, and it being admitted that the redemption was made without any antecedent request by appellant, and that he made no subsequent promise to refund the same to appellee, the question arises, whether upon the facts agreed the law will imply the *request* and *promise* necessary to support the action.

The general rule is that to sustain the count for money paid, the plaintiff must prove the actual payment and the defendant's prior request so to do, or his subsequent assent and approval of the act.   2 Greenl. Ev. § 113.

Under certain circumstances, however, the law will imply *both* the request and promise, as where the plaintiff has been compelled to pay money that the defendant was legally compellable to pay.   Jeffreys v. Gurr, 2 B. & Ad. 833; Pownall v. Ferrard, 6 B. & C. 439; Exall v. Partridge, 8 T. R. 308.   So when the defendant has adopted and enjoyed the benefit of the consideration, for in such case he ratifies the act of the plaintiff, and such act of ratification is held equivalent to precedent authority.   Doty v. Wilson, 14 Johns. 378; Kenan v. Holloway, 16 Ala. 54; Hatch v. Purcell, 1 Foster, 544.

Where the plaintiff voluntarily pays money that the defendant was legally or morally bound to pay, the moral obligation being such that it becomes a sufficient consideration for a promise, and the defendant afterwards promises in consideration of such payment, to repay the plaintiff, there the law will imply the request, the express promise being proven.   But in such case, in the absence of an express promise, or acts amounting to a ratification of the payment so made by plaintiff, no recovery can be had.   1 Saund. 264, note 1; Winsor v. Savage, 9 Met. 346; Young v. Dibbrell, 7 Humphreys, 270, and this upon the well settled rule of law, that one man cannot make himself, by his own voluntary act, the creditor of another.   Dedman v. Williams, 1 Scam. 155; Francisco v. Wright, 2 Gil. 691; Durant v. Rogers, 71 Ill.

In the case at bar, the appellant was not advised of the sale to Coney, or of the redemption by the appellee until after the transactions had occurred; no act of his, therefore, induced the action taken by them respectively. His only fault consisted in the failure to pay the judgments against him, but this mere neglect to pay his debts will not, in our opinion, raise an implied assumpsit in favor of any one voluntarily advancing the money to discharge such indebtedness.

The case of England v. Clark, 4 Scam. 486, is referred to as sustaining the position of appellee. In that case, England purchased a horse at a constable's sale, upon execution in favor of Clark. That afterwards a stranger recovered the property from England by title paramount to that of the defendant in execution. England then sued Clark in *indebitatus assumpsit*, to recover the money paid at the sale, and the court held that the plaintiff in execution was not liable; and while admitting that the purchaser ought to have a remedy, intimated that as the defendant in execution was the one most benefited by the transaction in having his debt paid, he, if any one, should make indemnity to the purchaser, yet expressly declined to decide that he would be liable upon an implied assumpsit, as the parties were not before the court.

This case cannot therefore be considered as an authority that the defendant in execution, even under the facts of that case, would be liable in assumpsit.

In Rees, Adm'r, v. Eames, 20 Ill. 282, the facts were that Andrews, the intestate of the plaintiff, while sheriff of Cook county held an execution against the defendants, which, upon demand, they promised to pay to the sheriff. That before the return day of the execution, the same was lost by the sheriff, without fault upon his part, whereby he was unable to return the writ according to its command, and therefore he became liable for the amount thereof to the plaintiff in execution. That after the return day of the execution, and before he paid it, he again demanded payment from the defendants, which they promised to make, but never did.

The court say: " On this state of facts the law will imply a promise on the part of the defendants to refund to the sheriff

Fowler v. Hall.

the amount which he has thus paid to satisfy this debt." "The sheriff was not bound to wait till he was sued for not returning the execution." "It is sufficient that he was liable for the amount, and then he had a right to pay it and save costs." "It is like a surety who voluntarily pays the debt after his liability is fixed." "Then the law will imply a request on the part of the principal." 'It is thus seen that this case is clearly within the rule above stated; that the law will imply both the request and promise where one is legally compelled to pay money that another is under a legal obligation to pay in the first instance. Not only that, but after the liability of the sheriff became fixed, the defendants expressly promised to pay the execution. It will hardly be contended that if the sheriff had not been made liable to pay the execution by its accidental loss, and a consequent inability to return it, and he had voluntarily paid it without a request so to do, or a subsequent promise to repay by the defendants, that an implied assumpsit would be raised by the law in his favor against them.

In McGhee v. Ellis and Browning, 4 Littell, 244, Ellis, who had purchased a slave, sold upon execution against Browning in favor of McGhee, had to surrender the slave to Brown, who was the real owner. The slave having been sold upon three months' credit, and Ellis having given his bond for the purchase price, exhibited his bill against both McGhee and Browning, asking that the collection of the bond be perpetually enjoined.

The court held in that case, that in the absence of any act done by the execution creditor to induce or influence the purchaser to bid off the property, he was not liable either at law or in equity to refund the money received by him in satisfaction of his judgment. The judgment debtor being before the court, however, he was held liable to the creditor by subrogating Ellis to the rights of McGhee under the judgment, and he was allowed to take a decree against Browning for the amount of such judgment. Commenting upon the question whether the liability of Browning was at law or in equity, the court say: "We have said that the defendant in error (Ellis) has a claim in conscience against him, and the only doubt whether

a decree ought, or ought not to be rendered against him, is, because it may be contended that the remedy is at law. If any remedy exists at law it cannot be an action on an implied .warranty of title, for no warranty can be presumed to be made by him of the title to the slave when he denies that he was instrumental in the sale, or that he ever represented the slave to be his and there is no proof that he did. In such case his bare defalcation in permitting a judgment to exist against him unpaid, is the only part he has taken, and this agency is too remote to raise an implied warranty of title. The same may be said of the action of implied assumpsit for money paid, laid out and expended for his use. True, a promise in such action will be implied frequently when the defendant has always resisted every acknowledgment that the money belongs to the plaintiff. But the true principle upon which the action is based in such cases, is that the money was expended for the benefit of the defendant through his immediate instrumentality; and here the instrumentality employed by Browning, .was his bare failure in the non-payment of his debt, which is too remote to become the basis of an implied assumpsit, whatever his case might be, had he been shown to be immediately instrumental in causing the property of a stranger to be sold in payment of his debt.

In Hawkins v. Miller, 26 Ind., it was expressly adjudged that at common law the purchaser at the sale, although acquiring nothing thereby, had no remedy against the execution debtor, but in equity he would be subrogated to the rights of the execution creditor.

We have not been referred to any authority holding that in such case the debtor is liable, as upon an implied assumpsit, and upon principle, in the absence of any act upon the part of the execution debtor which would reasonably induce the purchaser to place himself in that position we fail to see how the *assumpsit* can arise.

There is another consideration in this case that has great force with the writer hereof, in determining the non-liability of the appellant in this action.

The fact is admitted that Coney bid off the land in satisfac-

tion of his judgment, and such, I take it, would be the legal effect of a bid by him to the amount of his execution and costs—at least it would be a *prima facie* satisfaction. The judgment and execution became then satisfied of record, and the liability of Fowler to be again called upon to pay the judgment depended upon the future action of Coney in applying to the court to cancel the satisfaction, set aside the levy and to award another execution.

While under the admitted facts, Coney might, perhaps, upon notice to appellant, have obtained such relief by motion he was not compelled so to do. So far as disclosed by this record, he was still satisfied with his purchase, and never even intended to apply for any relief in that regard. If he was satisfied no one else had a right to complain. The future liability of Fowler, was a contingent one, depending upon the future action of Coney, and in my opinion Hall could not, by his own voluntary act, without any instrumentality upon the part of Fowler influencing his action, change such contingent liability into an absolute one. Hall's redemption was purely voluntary. He took it for granted that Fowler owned the land, and without any investigation as to the state of the title, paid his money to redeem it; but by that act he could not revive a satisfied judgment against his debtor.

The judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.

LACEY, P. J., dissenting.